UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

**IN RE:**

**GLOBALSTAR CAPITAL CORPORATION,**
a Delaware corporation, *et al.*,

**Debtors.**

**(GLOBALSTAR CAPITAL CORPORATION)**
**(GLOBALSTAR SERVICES COMPANY, INC.)**
**(GLOBALSTAR (DEBTOR), LLC)**
**(GLOBALSTAR, L.P.)**

**Jointly Administered**
**Case No. 02-10499 (PJW)**

**Chapter 11**

**(Case No. 02-10499 (PJW))**
**(Case No. 02-10501 (PJW))**
**(Case No. 02-10503 (PJW))**
**(Case No. 02-10504 (PJW))**

**RE: Docket No. 1410**

## ORDER CONFIRMING THE DEBTORS' FIRST MODIFIED FOURTH AMENDED JOINT PLAN UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

The Debtors' Fourth Amended Joint Plan under Chapter 11 of the Bankruptcy

Code dated May 3, 2004 (D.I. 1409) (as the same may be amended or modified, the Plan)[1]

having been jointly proposed and filed with the Court by Globalstar, L.P., Globalstar Capital

Corporation, Globalstar Services Company, Inc., and Globalstar (Debtor), LLC f/k/a Globalstar,

L.L.C., debtors and debtors in possession (collectively, the "Debtors" or "Globalstar"); and the

Court having entered, after due notice and a hearing, an order (the "Disclosure Statement Order")

dated May 5, 2004 pursuant to sections 1125 and 1126 of title 11 of the United States Code (the

"Bankruptcy Code"), Rules 2002, 3016, 3017 and 3020 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") and Del. Bankr. LR 3017-1(a) and 3017-1(b) (the "Local

Rules") (i) approving the Debtors' proposed disclosure statement for the Plan, dated May 3, 2004

(the "Disclosure Statement"), (ii) establishing procedures for the solicitation and tabulation of

votes on the Plan, (iii) approving the form of Ballots to be used in connection therewith, and (iv)

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.
The Debtors have made certain modifications to the Plan. The term "Plan" as used herein refers to the Plan, as
modified, except where context requires reference to the Plan dated May 3, 2004.

scheduling the hearing to consider confirmation of the Plan pursuant to sections 1128 and 1129 of the Bankruptcy Code (the "Confirmation Hearing"); and the Affidavit of Amber Poliskey Certifying the Votes Accepting or Rejecting the Debtors' Fourth Amended Joint Plan under Chapter 11 of the Bankruptcy Code (the "Vote Certification") having been filed with the Court; and the Affidavits of Service executed by Nova Lachman, relating to service of the Disclosure Statement (with the Plan as an exhibit), the Notice of (A) Deadline for Casting Votes to Accept or Reject and to File Objections to Confirmation of the Debtors' Fourth Amended Joint Plan under Chapter 11 of the Bankruptcy Code, (B) Hearing to Consider Confirmation of the Plan and (C) Related Matters, dated May 11, 2004 (the "Confirmation Hearing Notice") and related solicitation materials having been filed with the Court on June 10, 2004 (D.I. 1448-1456) (collectively, the "Notice Certifications"); and the certification of publication in the national edition of The Wall Street Journal on May 20, 2004 of the Confirmation Hearing Notice (the "Publication Certification") having been filed with the Court (D.I. 1462); and the Debtors having filed a Memorandum of Law, dated June 14, 2004 (the "Memorandum of Law") and the Affidavit of Daniel P. McEntee in support of confirmation of the Plan (the "McEntee Affidavit") (D.I. 1471) and the Affidavit of William Q. Derrough in support of confirmation of the Plan (the "Derrough Affidavit", together with the McEntee Affidavit, the "Confirmation Affidavits") (D.I. 1469); and due, sufficient and proper notice of the Confirmation Hearing having been given to all holders of Claims against, and Interests in, the Debtors and to other parties in interest, all in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order, and it appearing that no other or further notice need be given; and the Confirmation Hearing having been held by the Court on June 17, 2004; and the appearances of all interested parties having been noted in the record of the Confirmation Hearing; and upon the Plan, the Vote

NYI-2137314v9
WP3:1011573.5

58241.1001

Certification, the Notice Certifications, the Publication Certification, the Confirmation Affidavits, the Memorandum of Law, record of, and the evidence adduced at, the Confirmation Hearing and all proceedings had before the Court, and all the other papers filed in support of the Plan and in response to the objection to confirmation of the Plan; and the Court having considered all objections to confirmation of the Plan; and after due deliberation and sufficient cause therefor, it is hereby DETERMINED AND FOUND THAT[2]:

## Jurisdiction and Venue

A. The Court has jurisdiction over the Debtors' Chapter 11 Cases and to confirm the Plan pursuant to 28 U.S.C. § 1334. The Debtors are eligible debtors under section 109 of the Bankruptcy Code. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b) and this Court has jurisdiction to enter a final order with respect thereto. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Solicitation and Notice

B. The Disclosure Statement (including the Plan and the Disclosure Statement Order as exhibits thereto), Ballots, and Confirmation Hearing Notice were transmitted and served in compliance with the Bankruptcy Rules and the Disclosure Statement Order. The transmittal and service of such materials was due, adequate and sufficient. As described in the Notice Certifications, the Disclosure Statement (including the Plan and the Disclosure Statement Order as exhibits thereto), and the Confirmation Hearing Notice were transmitted to all creditors and interest holders of the Debtors, and such materials, together with Ballots and return envelopes, were transmitted to creditors eligible to vote on the Plan.

---

[2] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, made applicable to this proceeding pursuant to Fed. R. Bankr. P. 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

NYI-2137314v9
WP3:1011573.5

58241.1001

C. All parties required to be given notice of the Confirmation Hearing (including notice of the deadline for filing and serving objections to confirmation of the Plan) have been given due, proper, timely, and adequate notice in accordance with the Bankruptcy Rules, the Local Rules, and the Disclosure Statement Order, and have had an opportunity to appear and be heard with respect thereto. No other or further notice is required.

## Voting

D. Votes to accept or reject the Plan have been solicited and tabulated in good faith and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Disclosure Statement Order.

## The Plan Satisfies the Requirements of the Bankruptcy Code

E. The Plan complies with all applicable provisions of the Bankruptcy Code. The Plan is dated and identifies the entities submitting the Plan.

F. Article II of the Plan correctly designates and classifies Claims and Interests, other than Administrative Claims and Priority Tax Claims. The classification of Claims and Interests under the Plan complies with section 1122 of the Bankruptcy Code. Each Claim and Interest placed in a particular Class pursuant to the Plan is substantially similar to the other Claims or Interests, as the case may be, in such Class. A reasonable basis exists for the classification of Claims and Interests under the Plan, including, without limitation, the separate treatment of the Loral Claims and the Convenience Claims.

G. Article II of the Plan correctly specifies each Class of Claims or Interests that is not impaired under the Plan.

H. Article III of the Plan specifies the treatment of each Class of Claims or Interests under the Plan.

I. The Plan provides the same treatment for each Claim or Interest of a particular Class, unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of such particular Claim or Interest.

J. The Plan, including Articles IV, V, VI, VII, XIII and other provisions thereof, provides adequate means for its implementation. The Debtors will have sufficient cash to fund the cash distributions required to be made on the Effective Date.

K. The Plan provides for the dissolution of the Debtors. Upon the dissolution of the Debtors as contemplated by the Plan, all pre-Effective Date Interests in the Debtors, including any securities possessing voting power will be canceled and no new securities of the Debtors will be issued. Section 1123(a)(6) of the Bankruptcy Code is not applicable to the Plan.

L. Section IV.A.1(a) of the Plan provides for the continuation of directors of Globalstar Capital Corporation (which will be the last Debtor to dissolve), for an officer of Globalstar Capital Corporation, and contains provisions relating to their potential successors. The appointment to or continuance in, such offices is consistent with the interests of creditors and Interest holders and with public policy. The Debtors have sufficiently disclosed the expected compensation of insiders in the Memorandum of Law.

M. There is a sound business reason to reject executory contracts and unexpired leases that either have not been previously assumed or are not the subject of a pending motion to assume or reject.

N. The Debtors have complied with all applicable provisions of the Bankruptcy Code.

O. The Plan has been proposed in good faith and not by any means forbidden by law. The Debtors and their respective officers and directors, the Creditors Committee and its

NYI-2137314v9
WP3:1011573.5

58241.1001

members, and other parties in interest, including Loral, QUALCOMM and the Creditor DIP Lenders, and their respective representatives and advisors have acted in good faith in the negotiation and formulation of the Plan.

P. The Plan complies with section 1129(a)(4) of the Bankruptcy Code because any payment made or to be made by the Debtors for services or for costs and expenses in or in connection with the Debtors' Chapter 11 Cases, or in connection with the Plan and incident to the Debtors' Chapter 11 Cases, has been approved by, or is subject to the approval of, the Court as reasonable.

Q. No governmental regulatory commission has jurisdiction over the rates of the Debtors and therefore section 1129(a)(6) of the Bankruptcy Code is not applicable.

R. With respect to each impaired Class of Claims or Interests, each holder of a Claim or Interest has accepted the Plan or, as demonstrated in the Derrough Affidavit and the Debtors' Liquidation Analysis annexed as Exhibit "C" to the Disclosure Statement, will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount that such holder would so receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date.

S. With respect to Claims entitled to priority pursuant to section 507(a)(1) of the Bankruptcy Code, subject to paragraphs 34 and 35 hereof, the Plan provides that Administrative Claims shall receive payment in full in Cash of such Allowed Administrative Claim (or on such other terms as may be agreed to by the holder of such Administrative Claim) on the later of (i) the Effective Date or (ii) thirty (30) days after such Administrative Claim becomes an Allowed Administrative Claim, except for claims payable at a later date in the ordinary course of

business, the fees of the Indenture Trustee (payable after receipt of the invoice) and Creditor DIP Lender Claims, the holders of which have agreed to different treatment proposed in the Plan.

T. With respect to Allowed Priority Tax Claim, unless otherwise agreed by the holder of a Priority Tax Claim and the applicable Debtor, the Plan provides that each holder of an Allowed Priority Tax Claim will receive, in full satisfaction of its Priority Tax Claim, on the later of (i) the Effective Date or (ii) thirty (30) days after such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon after such dates as is practicable, Cash in an amount equal to such Allowed Priority Tax Claim.

U. Classes 1, 2 and 6 are unimpaired by the Plan and are conclusively presumed to have accepted the Plan.

V. Classes 3, 4, 5, 7 and 8 are impaired by the Plan. Classes 7 and 8 are not receiving any distributions pursuant to the Plan, are deemed to have rejected the Plan and therefore did not vote on the Plan. The Vote Certification demonstrates the Plan has been accepted in writing by the holders of more than one-half in number and two-thirds in amount of allowed Claims in each of Classes 3, 4 and 5, and, with respect to Classes 3 and 4, holders of more than one-half in number and two-thirds in amount of allowed Claims in each of Classes 3 and 4 determined without including any acceptance of the Plan by any insider. Accordingly, at least one Class of impaired creditors has voted to accept the Plan without including the acceptance of the Plan by any insider.

W. Since the Plan itself expressly provides for the liquidation of the Debtors, section 1129(a)(11) of the Bankruptcy Code is satisfied. Based upon the McEntee Affidavit, the Debtors have sufficient cash to make the distributions contemplated by the Plan, and the Debtors have sufficient liquidity to fund these Chapter 11 Cases.

X. Section IV.A.1(b) of the Plan provides that all fees payable under section 1930 of title 28, United States Code will be paid in Cash equal to the amount of such Administrative Claims.

Y. "Retiree benefit" plans (as such term is used in section 1114 of the Bankruptcy Code) if any, established by the Debtors prior to the Petition Date were discretionary, and, accordingly, no such payments are required to be made pursuant to section 1129(a)(13) of the Bankruptcy Code.

Z. The Plan does not "discriminate unfairly" against holders of Claims in Class 7 or the holders of Interests in Class 8. Separately classifying these different groups reflects the subordinated nature of the Securities Litigation Claims against, and Interests in, the Debtors. The Securities Litigation Claims are subordinated in payment to general unsecured creditors pursuant to section 510(b) of the Bankruptcy Code. Holders of Interests are subordinate in right of payment to holders of Claims. No holder of a Claim or Interest that is junior to the Claims in Class 7 or Class 8 will receive any property on account of its Claim or Interest under the Plan. There are no Interests other than those in Class 8. Accordingly, the Plan satisfies the "absolute priority rule" of section 1129(b)(2) of the Bankruptcy Code, is fair and equitable with respect to, and does not unfairly discriminate against Classes 7 and 8.

AA. All applicable requirements of sections 1129(a) and 1129(b) of the Bankruptcy Code have been met.

BB. The Plan implements or ratifies certain settlements and releases among the Debtors and other parties, including the Loral Settlement Agreement (including as implemented pursuant to Sections I.A.119, I.A.122, and VI.D.1(c) of the Plan), the QUALCOMM Settlement Agreement, and a settlement with the Creditor DIP Lenders with respect to their administrative

claims relating to their commitment fee (the "Creditor DIP Lender Settlement", together with the Loral Settlement Agreement and the QUALCOMM Settlement Agreement, the "Settlements"). The Loral Entities, the Debtors, and the Creditors Committee have agreed to the implementation of the Loral Settlement Agreement as set forth in the Plan. In light of the facts and circumstances of the Chapter 11 Cases, and after consideration of the likelihood of success on the merits, the complexity of the litigation, the attendant delay, expense and cost of litigation, the paramount interest of creditors, and the previous approval of the Loral Settlement Agreement and the QUALCOMM Settlement Agreement, the implementation and ratification of the Settlements is fair, reasonable and equitable.

CC. The parties being released have provided benefits to the Debtors' estates during the Chapter 11 Cases. The Loral Entities, their Representatives and the GP Debtors provided consideration in connection with the Loral Settlement, and the Loral Entities have reduced their claims to provide additional benefits to holders of General Unsecured Claims. The QUALCOMM Entities provided benefits to New Globalstar that inure to the benefit of holders of General Unsecured Claims. GTL has provided benefits to holders of General Unsecured Claims by forbearing from certain actions prior to the Effective Date which would have been adverse to the Debtors and their Estates. The General Partners Committee Releasees and the Debtors' Representatives provided service to the Debtors during the Chapter 11 Cases. The Debtors' Representatives endeavored during these cases to reach a successful restructuring of the Debtors' business, something that was not assured during these cases. The Creditors Committee and its Representatives have been actively involved in these chapter 11 cases and worked to achieve a successful restructuring of the Debtors' business while attempting to maximize the recovery for the holders of the General Unsecured Claims. The benefits provided by these parties were

necessary to the successful restructuring of the Debtors' business as acquired by New Globalstar. The settlements with Loral, the GP Debtors, and the QUALCOMM Entities provided important, if not essential, benefits to New Globalstar without which there may not have been a transaction with Thermo and the acquisition of the Debtors' assets by New Globalstar. The Plan is predicated upon the transaction with Thermo, and without such transaction, the Plan could not be confirmed. Because holders of the General Unsecured Claims are receiving Membership Interests, and because they are receiving additional Membership Interests if bound to the third party releases of the Loral Entities, the releases contained in the Plan are fair.

NOW it is hereby ADJUDGED, DECLARED and ORDERED THAT:

## Confirmation of the Plan

1. The Plan, a copy of which is attached as Exhibit A to this Order, is confirmed.

2. All objections to confirmation of the Plan that have not been withdrawn prior to the entry of this Order or are not cured by the relief granted herein are overruled in all respects for the reasons set forth by the Court in the record of the Confirmation Hearing. All withdrawn objections, if any, are deemed withdrawn with prejudice.

3. Pursuant to section 1125(e) of the Bankruptcy Code, the Debtors' transmittal of solicitation materials, their solicitation of acceptances of the Plan and their offering and distribution of Membership Interests, the Series A Rights, and the Series B Rights pursuant to the Plan are not, and will not be, governed by or subject to any otherwise applicable law, rule or regulation governing the solicitation of acceptances of a plan of reorganization or the offer, issuance, sale or purchase of securities.

4. Pursuant to section 1145(a)(1) of the Bankruptcy Code, the offering and distribution of the Membership Interests, the Series A Rights and the Series B Rights are, and will be, exempt from section 5 of the Securities Act of 1933, as amended (the "Securities Act"),

and any state or local law requiring registration for offer or sale of a security, or registration or licensing of an issuer or underwriter of, or broker or dealer in, a security. In addition, pursuant to section 1145(a)(2) of the Bankruptcy Code, the offering and distribution of the Membership Interests upon the exercise of the Series A Rights and the Series B Rights will be exempt from section 5 of the Securities Act and any state or local law requiring registration for offer or sale of a security, or registration or licensing of an issuer or underwriter of, or broker or dealer in, a security.

5. Pursuant to, and to the fullest extent permitted under, section 1145 of the Bankruptcy Code, the resale of any Membership Interest (to the extent permitted by the New Globalstar LLC Agreement) will be exempt from section 5 of the Securities Act and any state or local law requiring registration for offer or sale of a security, or registration or licensing of an issuer or underwriter of, or broker or dealer in, a security.

6. Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of any security under the Plan, or the making or delivery of any deed, bill of sale, assignment or other instrument of transfer under the Plan, shall not be taxed under any law imposing a stamp or similar tax.

## Releases, Injunctions and Settlements

7. Except as otherwise provided herein or in the Plan, on the Effective Date:

a. The provisions of the Plan bind the Debtors, any entity issuing securities under the Plan, any entity acquiring property under the Plan, and any creditor or Interest holder of the Debtors, whether or not the Claim or Interest of such creditor or Interest holder is impaired under the Plan, whether or not such Claim or Interest is Allowed, and whether or not such creditor or Interest holder has accepted the Plan; and

b. All of the property of the Debtors' estates ~~and all property dealt with by the Plan, in each case~~, to the extent not previously transferred to New Globalstar pursuant to the Asset Contribution Agreement is vested in New Globalstar, free and clear of all liens, Claims, charges, encumbrances, and Interests of creditors and interest holders of the Debtors, except liabilities assumed by New Globalstar or otherwise provided for in the Plan, the Asset Contribution Agreement, or the New Globalstar LLC Agreement.

8. The releases and injunctions set forth in Article XII of the Plan — including the releases of nondebtor parties pursuant to the general releases by holders of Claims against and Interests in the Debtors — are supported by substantial contributions to the Estates from the Loral Entities, the GP Debtors (which are only seeking a release from recourse liability), the QUALCOMM Entities, the Debtors, and the Creditors Committee, including their representatives, such contributions were important components to the transaction with Thermo which is the foundation for the Plan. The parties affected by the releases have overwhelmingly voted to accept the Plan on the Ballots and the parties that voted to accept the Plan have specifically consented to the releases contained in Articles XII of the Plan, to the extent necessary. In light of all of the circumstances, the releases in Articles XII of the Plan are fair to the releasing parties and are hereby approved.

9. **General Releases by the Non-Debtor Subsidiaries and Holders of Claims Against and Interests in the Debtors of (a) the Debtors, (b) the Non-Debtor Subsidiaries, (c) New Globalstar and Its Subsidiaries, (d) the Creditors Committee, (e) GTL, and (f) Representatives of the Foregoing.** Pursuant to the Plan, each (a) Non-Debtor Subsidiary, (b) holder of (i) a Claim (whether or not allowed) against or Interests in a Debtor or (ii) a GLP Partnership Interest and (c) Person (i) voting to accept the Plan on any Ballot or (ii) participating

in exchanges and distributions under or pursuant to the Plan, shall release and discharge, absolutely, unconditionally, irrevocably and forever, any and all Claims or Causes of Action arising from the beginning of time through the Effective Date against (i) the Debtors, (ii) the Non-Debtor Subsidiaries, (iii) New Globalstar and its subsidiaries, (iv) the Creditors Committee, (v) GTL, and (vi) the Representatives of any of the foregoing, in any way directly or indirectly relating to or concerning the Debtors, including their management and operations, the Chapter 11 Cases or the Plan; provided, however, that the foregoing shall not operate as a waiver or release from, subject to applicable rights of offset, if any, commercial claims, loans and trade obligations owed to the Debtors or the Non-Debtor Subsidiaries by such Entities. Any Entity acquiring a Claim or Interest from an Entity that is bound by the release set forth in Section XII.A of the Plan shall be bound by such release as if such acquiring Entity had agreed to be bound to the release with respect to such acquired Claim or Interest. The releases set forth herein shall not apply to (i) Claims or Causes of Action against any entity for their fiduciary obligations, if any, under ERISA, (ii) Securities Litigation Claims against any Securities Litigation Defendant to the extent such Claims are asserted in the Securities Class Action and the holder of any such Securities Litigation Claim is not also a holder of a General Unsecured Claim; provided, however, that such Securities Litigation Claims against GLP or GCC shall be released except to the extent of the treatment provided to such Claims under the Plan, (iii) with respect to the Creditors Committee and Representatives of (a) the Creditors Committee and (b) the Debtors, liability for an act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct, and (iv) the Securities and Exchange Commission with respect to the enforcement of its police and regulatory powers against any non-debtor.

10. **General Releases by Non-Debtor Subsidiaries and Holders of Claims Against and Interests in the Debtors of the Loral Entities and General Partners Committee Releasees.** Pursuant to the Plan, each (a) Non-Debtor Subsidiary, (b) holder of (i) a Claim (whether or not allowed) against or Interest in a Debtor or (ii) a GLP Partnership Interest, or (c) Person (i) voting to accept the Plan on any Ballot or (ii) participating in exchanges and distributions under or pursuant to the Plan shall release and discharge, absolutely, unconditionally, irrevocably and forever, any Claim or Cause of Action arising from the beginning of time through the Confirmation Date against the Loral Entities or any Representative thereof, or the General Partners Committee Releasees, in any way directly or indirectly relating to or concerning the Debtors, including their management and operations, the Chapter 11 Cases or the Plan (other than (i) Claims arising after the Confirmation Date under any Assumed Contract; (ii) Claims for all sums due in connection with ordinary course postpetition commercial transactions between any Loral Entity and any Globalstar Entity; and/or (iii) Claims arising under the Loral Settlement Agreement). Any Entity acquiring a Claim or Interest from an Entity that is bound by this Third Party Release shall be bound by such Third Party Release as if such acquiring Entity had agreed to be bound to the Third Party Release with respect to such acquired Claim or Interest. The releases set forth herein shall not apply to (i) Claims or Causes of Action against any entity for their fiduciary obligations, if any, under ERISA, and (ii) Securities Litigation Claims against any Securities Litigation Defendant to the extent such Claims are asserted in the Securities Class Action and the holder of any such Securities Litigation Claim is not also a holder of a General Unsecured Claim.

11. **General Releases by Non-Debtor Subsidiaries and Holders of Claims Against and Interests in the Debtors of the QUALCOMM Entities and Related Parties.**

Pursuant to the Plan, each (a) Non-Debtor Subsidiary, (b) holder of (i) a Claim (whether or not allowed) against or Interest in a Debtor or (ii) a GLP Partnership Interest, or (c) Person (i) voting to accept the Plan on any Ballot or (ii) participating in exchanges and distributions under or pursuant to the Plan, shall release and discharge, absolutely, unconditionally, irrevocably and forever, any Claim or Cause of Action arising from the beginning of time through the Confirmation Date against the QUALCOMM Entities, their subsidiaries, and the Representatives of the foregoing in any way directly or indirectly relating to or concerning the Debtors, including their management and operations, the Chapter 11 Cases or the Plan (other than Claims or Causes of Action arising under the QUALCOMM Settlement Agreement or Claims or Causes of Action that were not released pursuant to the QUALCOMM Settlement Agreement). Any Entity acquiring a Claim or Interest from an Entity that is bound by the release set forth in of Section XII.C of the Plan shall be bound by such release as if such acquiring Entity had agreed to be bound to the release with respect to such acquired Claim or Interest. The releases set forth herein shall not apply to (i) Claims or Causes of Action against any entity for their fiduciary obligations, if any, under ERISA, and (ii) Securities Litigation Claims against any Securities Litigation Defendant to the extent such Claims are asserted in the Securities Class Action and the holder of any such Securities Litigation Claim is not also a holder of a General Unsecured Claim.

12. **General Releases by Non-Debtor Subsidiaries and Holders of Claims Against and Interests in the Debtors of the GP Debtors.** Pursuant to the Plan, each (a) Non-Debtor Subsidiary, (b) holder of (i) a Claim (whether or not allowed) against or Interest in a Debtor or (ii) a GLP Partnership Interest, or (c) Person (i) voting to accept the Plan on any Ballot or (ii) participating in exchanges and distributions under or pursuant to the Plan, shall release and discharge, absolutely, unconditionally, irrevocably and forever, any Claim or Cause of Action

NYI-2137314v9
WP3:1011573.5
58241.1001

arising from the beginning of time through the Confirmation Date against the GP Debtors to the extent based on any GP Debtor being a direct or indirect general partner of the Debtors. Any Entity acquiring a Claim or Interest from an Entity that is bound by the release set forth in of Section XII.D of the Plan shall be bound by such release as if such acquiring Entity had agreed to be bound to the release with respect to such acquired Claim or Interest. The releases set forth herein shall not apply to (i) Claims or Causes of Action against any entity for their fiduciary obligations, if any, under ERISA, and (ii) Securities Litigation Claims against any Securities Litigation Defendant to the extent such Claims are asserted in the Securities Class Action and the holder of any such Securities Litigation Claim is not also a holder of a General Unsecured Claim.

13. **Release by the Debtors of their Representatives, the Creditors Committee and its Representatives, the Loral Entities and their Representatives, the General Partners Committee Members, the GP Debtors, and QUALCOMM and its Representatives.** Pursuant to the Plan, each Debtor absolutely, unconditionally, irrevocably and forever releases and discharges its Representatives from any Claim or Cause of Action arising from the beginning of time through the Confirmation Date in any way directly or indirectly relating to or concerning the Debtors, including their management and operations, the Chapter 11 Cases or the Plan, provided, however, that the foregoing shall not operate as a waiver or release (i) from, subject to applicable rights of offset, if any, commercial claims, loans and trade obligations owed to the Debtors, (ii) from any Claim or Cause of Action for which an action has been commenced by the Debtors prior to the Confirmation Date, and (iii) from liability for an act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct. Pursuant to the Plan, each Debtor absolutely, unconditionally, irrevocably and forever releases and discharges the Creditors Committee and its

Representatives from any Claim and/or Cause of Action arising from the beginning of time through the Confirmation Date in any way directly or indirectly relating to or concerning the Debtors, including their management and operations, the Chapter 11 Cases or the Plan, provided, however, that the foregoing shall not operate as a waiver or release (i) from, subject to applicable rights of offset, if any, commercial claims, loans and trade obligations owed to the Debtors, and (ii) from liability for an act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct. The Plan ratifies the Loral Settlement Agreement and the releases granted by the Debtors pursuant to the Loral Settlement Agreement are extended to cover the period from April 14, 2003 through the Confirmation Date, and correspondingly the Loral Entities and GP Debtors shall be deemed to have ratified the Loral Settlement Agreement and the releases granted therein as of the Confirmation Date. The Plan ratifies the QUALCOMM Settlement Agreement and the releases granted by the Debtors pursuant to the QUALCOMM Settlement Agreement are extended to cover the period from the date of approval thereof through the Confirmation Date, and correspondingly the QUALCOMM Entities shall be deemed to have ratified the QUALCOMM Settlement Agreement and the releases therein as of the Confirmation Date.

14. **Exculpation**. None of the Debtors, their officers, members of the General Partners Committee, the Creditors Committee, or the Representatives of any of the foregoing in such capacity, shall have or incur any liability to any Entity whatsoever, including any holder of any Claim (whether or not allowed) or Interests, or any Entity participating in exchanges and distributions under or pursuant to the Plan, for any act or omission in connection with, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination or confirmation of the Plan, the consummation of the Plan or the administration of the Plan, the Disputed Claims

Reserve, or property to be distributed pursuant to the Plan, or any contract, instrument, release or other agreement or document created or entered into, pursuant to or in connection with the Plan; provided, however, that the foregoing provisions of this paragraph will have no effect on: (i) the liability of any Entity that would otherwise result from the failure to perform or pay any obligation or liability under the Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with the Plan; (ii) the liability of any Entity that would otherwise result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct; and (iii) the Securities and Exchange Commission with respect to the enforcement of its police and regulatory powers against any non-debtor. The releases set forth herein shall not apply to Claims or Causes of Action against any entity for their fiduciary obligations, if any, under ERISA. In addition to the foregoing, the directors and officers of GCC serving after the Effective Date shall incur no personal liability to any Entity for any act or omission in connection with, or arising out of, their administration of the Plan, or the Disputed Claims Reserve, or any other act or omission in connection with the operation of GCC as set forth in Section IV.A.1(c) of the Plan; provided, that, such directors and officers may be found to be liable for acts or omissions resulting from gross negligence, fraud or willful misconduct. The Bankruptcy Court shall retain exclusive jurisdiction over any action or proceeding commenced against the directors and officers of GCC serving from and after the Effective Date in connection with, arising out of, or related to their service as directors and officers of GCC from and after the Effective Date. No action or proceeding may be commenced against the directors and officers of GCC serving from and after the Effective Date in connection with, arising out of, or related to

their service as directors and officers of GCC from and after the Effective Date without the prior approval of the Bankruptcy Court.

15. **General Injunctions.** Except as otherwise provided in the Plan or the Confirmation Order, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all Entities who have held, hold or may hold as of the Confirmation Date any Claims or Causes of Action against any of the Entities released pursuant to the provisions of the Plan (including Sections XII.A, XII.B, XII.C, XII.D XII.E and XII.F of the Plan or pursuant to any settlement authorized pursuant to the Plan) are permanently enjoined from and after the Confirmation Date from the prosecution, whether directly, indirectly, derivatively or otherwise, of any such Claim or Causes of Action released, discharged or terminated pursuant to the provisions of the Plan.

16. **Injunctions Relating to New Globalstar.** Except as otherwise provided in the Plan or the Confirmation Order, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all Entities who have held, hold or may hold Claims (whether or not allowed) against or Interests or GLP Partnership Interests in any of the Debtors or the Estates are, with respect to any such Claims (whether or not allowed) or Interests or GLP Partnership Interests, permanently enjoined from and after the Confirmation Date from: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting New Globalstar, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, New Globalstar or any property of any such transferee or successor; (b) enforcing, levying, attaching (including any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment,

NYI-2137314v9
WP3:1011573.5

58241.1001

award, decree or order against New Globalstar or any of its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, New Globalstar, or any property of any such transferee or successor; (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the New Globalstar or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, New Globalstar; (d) asserting any right of setoff or subrogation of any kind, directly or indirectly, against any obligation due New Globalstar, any of its property, or any direct or indirect transferee of any property of, or successor in interest to, New Globalstar; and (e) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law, in each case, on account of such Claims or Interest; provided, however, that nothing contained in Section XII.G.2 of the Plan shall operate as a release from, or operate as an injunction with respect to, Claims or Causes of Action against New Globalstar in connection with the consummation of the transaction with Thermo or with respect to the New Globalstar LLC Agreement or for fiduciary obligations, if any, under ERISA.

17. The Settlements implemented and ratified by the Plan are approved in total and the parties thereto shall be and hereby are authorized and directed to carry out its terms and conditions without the need for further notice to any party or order of this Court. The parties have negotiated the Settlements in good faith and at arm's-length, and the terms of the Settlements are fair and reasonable to, and in the best interests of, the Debtors, their estates, and their creditors. The Settlements and the released granted by the Debtors pursuant thereto are hereby ratified as of the Confirmation Date.

## Substantive Consolidation

18. The substantive consolidation of the Debtors' Estates, as described in Article IX of the Plan, is appropriate and will promote a more equitable distribution of the Debtors' assets to creditors and will not substantially prejudice creditors. Therefore, the substantive consolidation of the Debtors' Estates is hereby approved. On the Effective Date, the Chapter 11 Cases of the Debtors (other than that of Globalstar Capital Corporation) shall be deemed closed.

## Modifications to the Plan

19. The Debtors have proposed certain modifications to the Plan, annexed as Exhibit A to the Memorandum of Law (together with any other modifications made at, prior to, or as a result of, the Confirmation Hearing, the "Modifications"). For the avoidance of doubt, nothing in Article XII of the Plan or in this Order shall operate to release Loral/DASA Globalstar, L.P. or any other Loral Entity from any Claims for sums due in connection with ordinary course postpetition commercial transaction owing to New Globalstar, Globalstar USA, LLC or any other Globalstar Entity.

20. The Modifications: (a) comply in all respects with section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019 and all other provisions of the Bankruptcy Code; and (b) do not adversely change the treatment under the Plan of any Claims or Interests. In light of the nature of each of the Modifications and the prior disclosures made in the Disclosure Statement, no additional disclosure under section 1125 of the Bankruptcy Code is required with respect to the Modifications. Accordingly, pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all holders of Claims and Interests that have accepted or are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan, including all Modifications thereto.

21. As a result of the Modifications, on the Effective Date, any proof of claim filed by PBGC in these Chapter 11 Cases shall be deemed withdrawn; and provided that the Chapter 11 cases are not dismissed after the Effective Date, deemed withdrawn with prejudice as to only the Debtors.

## Retention of Jurisdiction

22. The Court shall retain subject matter jurisdiction in accordance with Article XIII of the Plan and to the fullest extent permitted under the Bankruptcy Code.

## Executory Contracts and Unexpired Leases

23. Pursuant to section 365(a) of the Bankruptcy Code, the rejection on the Confirmation Date of all Executory Contracts and Unexpired Leases is approved, except for any Executory Contract or Unexpired Lease (a) that has been assumed or rejected pursuant to an order of the Bankruptcy Court entered prior to the Confirmation Date or (b) as to which a motion for approval of the assumption or rejection of such contract or lease has been filed prior to the Confirmation Hearing.

24. All proofs of claims arising from the rejection of Executory Contracts or Unexpired Leases rejected pursuant to the Plan, if any, shall be filed with Robert L. Berger & Associates, LLC, PMB 1014, 10351 Santa Monica Blvd., Suite 101A, Los Angeles, CA 90025 on or before the thirtieth (30th) day after the Confirmation Date. Any Claims arising from the rejection of any executory contract or unexpired lease not filed within such time will be forever barred from assertion against the Debtors, their Estates, New Globalstar and their respective property and receiving a distribution from the Estates.

## Claims; Indenture Trustee Fees

25. On and after the date of entry of this Order, Globalstar Capital Corporation (and subsequent to its dissolution, New Globalstar) shall have the exclusive authority to file

objections, settle, compromise, withdraw, or litigate to judgment objections to Claims or Interest, except as otherwise provided for in the Plan with respect to pending objections.

26. The provisions, set forth in Section III.A.1(e) of the Plan, relating to the payment of the Indenture Trustee's Administrative Claims for its reasonable and necessary fees and expenses incurred by the Indenture Trustee and its counsel, as provided for in the Senior Notes Indentures, of the Plan is approved.

## Administrative Bar Date

27. Except as provided in Sections III.A.1(b), (d), (e) and (f) of the Plan, all Entities (including individuals, corporations, partnerships, estates, trusts, and governmental units) holding Administrative Claims against the Debtors must file a request for allowance of such Administrative Claims no later than forty-five days after the Effective Date. Such a request must be filed with Robert L. Berger & Associates, LLC, PMB 1014, 10351 Santa Monica Blvd., Suite 101A, Los Angeles, CA 90025 and the Bankruptcy Court. All requests for allowance of Administrative Claims must be submitted in a form in accordance with the Bankruptcy Code and the Bankruptcy Rules. The failure to timely filed a request for an allowance of an Administrative Claim will bar a recovery from the Debtors or their estates on account thereof.

## Implementation

28. On the Effective Date, except to the extent otherwise provided in the Plan, the Senior Notes, the Senior Note Indentures, any vendor financing agreements, any credit facility and any other prepetition debt instruments shall be deemed canceled and of no further force and effect. The GLP Partnership Interests and Interests in the GLP Subsidiary Debtors shall be deemed canceled and of no further force and effect when the Debtors are dissolved in accordance with Section IV of the Plan. The holders of Claims and Interests relating to the foregoing shall

have no rights arising from or relating to such instruments, securities or other documents except as provided for in the Plan.

29. The issuance and distribution of the Membership Interests, the Series A Rights and the Series B Rights under the Plan and related documents pursuant to the Plan is hereby authorized without the need for any further corporate or similar action. The dissolution of the Debtors is authorized without the need for any further corporate or similar action.

30. Each of the Debtors is hereby authorized and empowered to execute, deliver, file, or record such contracts, instruments, releases and other agreements or documents whether or not specifically referred to in the Plan or any exhibit or supplement to the Plan, and to take any action necessary or appropriate to implement, effectuate, and consummate the Plan in accordance with its terms, all without further application to, or order of, this Court.

31. Each federal, state and local governmental agency or department is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the Plan and the transactions contemplated thereby.

32. In accordance with section 1123(b)(3)(B), New Globalstar may enforce any and all Causes of Action that have not been released pursuant to Article XII of the Plan.

33. The Debtors' interest in GlobalTel C.J.S.C. shall irrevocably pass to Loral on the Effective Date. Such that Loral or such affiliate designee shall be the Debtors' legal successor with respect to the Debtors or Non-Debtor Subsidiaries' interest in the equity interest in GlobalTel C.J.S.C. The Debtors shall execute and provide to Loral any documents reasonably requested by Loral to evidence such result.

## Compensation and Reimbursement

34. On or before the sixtieth day after the Effective Date (or such later date as may be fixed by the Bankruptcy Court), each entities seeking payment under section 330(a), 331,

503 or 1103 of the Bankruptcy Code for compensation of a Professional or other entity for services rendered or expenses incurred in the Chapter 11 Cases through and including the Effective Date shall file their respective final applications (the "Final Fee Applications") for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date, together with proof of service thereof, and serve such application on the Debtors, counsel for the Debtors, the Office of the United States Trustee and counsel for the Creditors Committee.

35. A hearing to consider Final Fee Applications shall be held before the Court on October 7, 2004 at 3:30 p.m. or as soon thereafter as counsel may be heard (the "Final Fee Hearing"). The Final Fee Hearing may be adjourned without further notice other than an announcement at the Final Fee Hearing or an adjourned Final Fee Hearing.

36. Objections to a Final Fee Application, if any, shall be filed with the Court, together with proof of service thereof, and served upon the applicant, the parties set forth in Section XIV.G of the Plan so as to be received not later than 4:00 p.m. (ET) on the date that is twenty (20) days after the Final Fee Application is filed and served.

37. Except as otherwise set forth herein or in the Plan, expenses incurred by the Debtors or New Globalstar on and after the Effective Date, including, without limitation, professional fees and expenses, shall not be subject to application and may be paid by the Debtors or New Globalstar in the ordinary course of business and without further order of the Court. Any unresolved dispute as to professional compensation and reimbursement of expenses relating to the period prior to the Effective Date shall be submitted to, and determined by, this Court.

## Notice of Entry of Confirmation Order and of the Effective Date

NYI-2137314v9
WP3:1011573.5

25

58241.1001

38. On or before the date that is ten (10) days after occurrence of the Effective Date, the Debtor shall (a) serve by hand delivery, first class mail, or reputable overnight delivery service, a notice of the entry of this Order, in substantially the form annexed hereto as Exhibit "B" (the "Confirmation Notice") to each of the following at their respective addresses last known to the Debtors: (i) the Office of the United States Trustee for the District of Delaware, (ii) attorneys for the Creditors Committee, (iii) attorneys for Loral, (iv) attorneys for QUALCOMM, (v) attorneys for Thermo, (vi) all indenture trustees, (vii) all parties that have filed requests for notices in the Debtors' Chapter 11 Cases, (viii) the Securities and Exchange Commission, (ix) the Internal Revenue Service, (x) state and local taxing authorities having jurisdiction over the Debtors, and (xi) all other known record holders of Claims against, and Interests in, the Debtors, and (b) publish such notice at least once in the national edition of either The New York Times or The Wall Street Journal. Such service shall constitute good and sufficient notice pursuant to Fed. R. Bankr. P. 2002(f)(7) and 2002(i)-(l) of the confirmation of the Plan, the entry of this Order, and the occurrence of the Effective Date and no other or further notice need be given.

## Approval of Entire Plan

39. The failure to specifically include any particular provision of the Plan in this Order shall not diminish or impair the efficacy of such provision, it being understood the intent of this Court that the Plan be confirmed and approved in its entirety.

## Waiver of Bankruptcy Rule 3020(e)

40. The stay provided by Bankruptcy Rule 3020(e) shall not apply to the Confirmation of the Plan and this Order shall be effective upon entry.

Dated: June **17** 2004
Wilmington, Delaware

PETER J. WALSH
UNITED STATES BANKRUPTCY COURT
JUDGE